## Upholsterers' International Union of North America, etc. v. Hoffman Stratford Furniture Corp.

*Irwin S. Rubin*, for petitioner.

*Wisler, Pearlstine, Talone & Gerber*, for respondent.

DANNEHOWER, J., March 23, 1956.—This is a petition by plaintiff union and its members pursuant to the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §163, requesting the court to enter an order on defendant company to show cause why arbitration should not proceed in accordance with the written provisions contained in their collective bargaining agreement.

In its answer to the petition defendant company averred that this court has no jurisdiction over the cause because defendant was engaged in interstate commerce, and that plaintiff's parent organization, the Upholsterers' Union of North America, A. F. of L., should have been joined as an indispensable party to the petition. By written stipulation it was agreed that defendant company is engaged in interstate commerce.

Following argument before the court en banc, the matter is now before us pending disposition.

A fair statement of the factual background preceding the petition is as follows:

On January 1, 1955, plaintiff union, hereinafter referred to as the "union", and defendant company entered into a general management-labor agreement which provided, inter alia, for compulsory arbitration in the settlement of all disputes arising between the parties. Burton Sheetz, a member of the union and an employe of defendant for the past 25 years, was injured in November, 1954, while in the course of his

employment. On June 13, 1955, he reported back to work but defendant refused to accept him as an employe because of his alleged inability to perform the services required by his job classification. Grievance proceedings were instituted, followed by the union's motion to submit the dispute to arbitration. The company refused to arbitrate the matter and the union thereupon filed its petition to this court.

Plaintiff's contention and argument is that the question presented in the petition is controlled by the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §163, which provides as follows, at section 3:

"The party aggrieved by the alleged failure, neglect, or refusal of another to perform under a written agreement for arbitration, may petition the court of common pleas of the county having jurisdiction for an order to show cause why such arbitration should not proceed in the manner provided for in such agreement. . . ."

Defendant, in reply, argues that its refusal to arbitrate is in effect an unfair labor practice within the meaning of the Labor Management Relations Act of June 23, 1947, C. 120 sec. 101, 61 Stat. at L. 140, 29 U. S. C. §158 et seq., and that accordingly, the controversy comes under the exclusive jurisdiction of the National Labor Relations Board and this court has no jurisdiction.

Thus, the narrow question presented is whether defendant's refusal to grant the union's request for arbitration concerning the reinstatement of Burton Sheetz, is an unfair labor practice within the scope of the Labor Management Relations Act.

The term, "unfair labor practice", as applied to employers, refers to any activities which tend to inhibit employes in their right to freedom of speech concerning union affairs, which interfere with, re-

strain or coerce employes in the exercise of their right to engage in collective bargaining, which dominate or control the employes' labor organization, which encourage or discourage membership in any union, which result in the discharge of any employe because he has filed unfair labor charges or has given testimony under the act and which result in failure to bargain collectively with the duly authorized representatives of a majority of the employes: Act of 1947, sec. 101, 61 Stat. at L. 140, 29 U. S. C. §158.

The following have been characterized as "unfair labor practice" within the meaning of the act: Prohibiting solicitation for membership in a union (N. L. R. B. v. William Davies Co., C. C. A. 7, 135 F. 2d 179); refusal to bargain collectively (Art Metals Const. Co. v. N. L. R. B., C. C. A. 2, 110 F. 2d 148); discharge of an employe because of membership in or acting on behalf of a labor organization (N. L. R. B. v. Newark Morning Ledger, C. C. A. 3, 120 F. 2d 262); engaging in a plan to discourage unionization and to eliminate unions (N. L. R. B. v. Superior Tanning Co., C. C. A. 7, 117 F. 2d 881); refusal to reinstate striking employes (Western Cartridge Co. v. N. L. R. B., C. C. A. 7, 139 F. 2d 855); discriminating in hiring, in tenure, or concerning any term or condition of employment by reason of union activities: McNish v. American Brass Co., 139 Conn. 44, 89 A. 2d 566.

A review of the pertinent statutory enactments and the judicial interpretations placed thereon convinces us that defendant's act in refusing to arbitrate the dispute concerning the reinstatement of Burton Sheetz is not an "unfair labor practice" as defined by the Labor Management Relations Act, and that, therefore, this court has jurisdiction over the issue.

It is evident that one of the primary purposes of the act is to restrain employers from undermining the efforts of their employes in forming labor organiza-

tions, and to compel employers to recognize the duly chosen representatives of the union and to bargain collectively with them. Refusing to arbitrate a question of reinstatement of an employe is not, in our opinion, an act which interferes with the employes right to organize and maintain their own labor organization or which poses a threat to the union itself or to any of its members. Therefore, there is no merit in defendant's contention that its conduct amounts to an "unfair labor practice".

Defendant next avers that the petition is fatally defective for failure to join an indispensable party, namely, the parent union. The argument is refuted by the opening paragraph of the labor-management contract entered into between the parties which designates, " . . . the Upholsterers' International Union . . . acting through its agent Local Union No. 101, for itself and in behalf of the employees now employed . . .", as party of the second part. There is no necessity therefore to join the parent association, the Upholsterers' International Union, as a party to the present petition.

We are also unable to see any merit in defendant's technical objection to the verification appearing on plaintiff's petition.

In view of the foregoing, we are of the opinion that defendant's objections should be dismissed and that the dispute should be submitted to arbitration: International Ladies' Garment Workers' Union, A. F. of L. v. Nazareth Mills Co., 87 D. & C. 589.

### Order

And now, March 23, 1956, for the foregoing reasons, it is ordered and directed that the parties proceed with arbitration in accordance with the terms of article 7 of their written agreement.